1998 ME 120

### Richard W. BRIGGS et al.

v.

### Daryl A. BRIGGS et al.

Supreme Judicial Court of Maine.

Submitted on Briefs April 8, 1998.

Decided May 27, 1998.

---

1. Suttie does not challenge the court's dismissal of Samuel Sloan for lack of personal jurisdiction.

Gregory A. Tselikis, Gayle H. Allen, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for plaintiff.

Thad B. Zmistowski, Eaton, Peabody, Bradford & Veague, P.A., Bangor, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Defendants Daryl A., Bryan W., and Gary R. Briggs appeal from a summary judgment entered in the Superior Court (Penobscot County, *Alexander, J.*) in favor of plaintiffs Richard W. and R. Murray Briggs on their complaint alleging the defendants' default with respect to certain notes and agreements. On appeal, the defendants argue that the court erred in construing the notes and agreements to require, upon default, accelerated payment of the entire principal balance. We agree and therefore vacate the judgment.

[¶ 2] The notes and agreements at issue were generated in connection with a bankruptcy reorganization of Briggs, Inc. In July 1987, defendants Daryl, Bryan, and Gary executed two identical promissory notes, one in favor of Richard and the other in favor of Murray, as consideration for the purchase of their interest in the corporation. The notes obligated the defendants, jointly and severally, to pay each plaintiff a principal amount of $96,750, plus interest, beginning on the commencement date. Attached to and incorporated by reference into each note were writ-

ten agreements giving rise to the obligations memorialized in the notes. Pursuant to those agreements, the defendants also promised to make weekly payments of $550 to each plaintiff for a period of five years, but could "defer all or any part of such weekly payments, interest free in which case, such deferred payments [would] be added to and become part of" the principal balances of the notes. The notes also expressly recognized the addition of these deferred payments to their respective principal balances. The parties do not dispute the amount deferred or the total principal due as of the commencement date. The notes define the commencement date as the date of full payment to or satisfaction of certain unsecured creditors of Briggs, Inc. in a related Chapter 11 bankruptcy reorganization. Each note contained the following terms:

> The entire principal balance of this note shall be due and payable as of the commencement date. However, the makers hereunder may, at their option, elect to repay the obligation, with interest after the commencement date as defined and described in paragraph one above, in 60 equal monthly installments of principal and interest.

The attached agreements contained similar terms:

> At the option of the makers, however, the balance due on the commencement date may be amortized over 5 years in equal monthly installments of principal and interest, the interest commencing on the commencement date.

[¶ 3] On the commencement date, the defendants exercised their options and elected to repay their obligations in sixty monthly installments. After thirty-seven timely installment payments, however, the defendants failed to make several payments. In July 1997, the plaintiffs filed a four-count complaint in the Superior Court, alleging the defendants' default and seeking recovery of the entire principal balance due under the notes and attached agreements.[1] The defendants filed an answer, admitting their default

on multiple payments but disputing the amount of recovery available to the plaintiffs under the contracts.

[¶ 4] Following a hearing on plaintiffs' motion for summary judgment, the court concluded that the entire principal balance of the notes (including the amounts deferred pursuant to the attached agreements) became due and payable on default. Finding that the principal balance due under each note was $40,453.19 and that the principal balance under each agreement was $62,337.09,[2] the court ordered that judgment be entered for the plaintiffs in the amount of $205,660.56, plus attorney fees of $4,835. This appeal followed.

[¶ 5] A party is entitled to summary judgment where there is no genuine issue of material fact and the party, on the undisputed facts, is entitled to judgment as a matter of law. *See Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me. 1993); M.R. Civ. P. 56(c). "In reviewing a grant of summary judgment, we view the evidence in a light most favorable to the party against whom the judgment was entered and review the court's decision for errors of law." *Gagne v. Stevens*, 696 A.2d 411, 413–14 (Me.1996).

[¶ 6] The promissory notes and agreements between the parties are contracts to which basic principles of contract law apply. *See Roc–Century Assocs. v. Giunta*, 665 A.2d 220, 221–22 (Me.1995). A court that is called upon to enforce disputed terms within an integrated contract must first determine whether those terms are ambiguous. Whether contract language is ambiguous is a question of law. *See Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me.1995). The interpretation of an integrated unambiguous contract also presents a question of law, *see Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 516 (Me.1996), and we review such questions *de novo, see Collins v. Trius, Inc.*, 663 A.2d 570, 572 (Me.1995). A contract must be interpreted to effect the parties' intentions as reflected in the written instrument, con-

---

1. Counts I and II sought recovery on the notes; counts III and IV sought recovery on the agreements.

2. As of September 3, 1997, the defendants had defaulted on eight installment payments.

strued with regard for the subject matter, motive, and purpose of the instrument, as well as the object to be accomplished. *See Bumila v. Keiser Homes of Maine, Inc.,* 1997 ME 139, ¶ 12, 696 A.2d 1091, 1094.

[¶ 7] In response to the plaintiffs' motion for a summary judgment, the defendants challenged the meaning of the contract language set out above, and consequently, the amount due on the notes. Specifically, the defendants argued that this language precluded the plaintiffs from accelerating the defendants' installment payments. The court implicitly found the disputed language to be unambiguous, but accepted the plaintiffs' proffered interpretation of the language at issue, concluding that because the note described the balance as due and payable as of the commencement date, the plaintiffs were, upon breach, entitled to accelerate the remaining payments due. While we agree with the court that the documents are not ambiguous, we conclude that the language allowing the defendants to exercise an option to make installment payments over sixty months (referred to as five years in the agreements) unambiguously altered the dates upon which payments were due.

[¶ 8] Where a note provides for a fixed succession of installment payments, each installment becomes due and payable at the time specified for its payment and not before. *See Hills v. Gardiner Sav. Inst.,* 309 A.2d 877, 882–83 (Me.1973). Absent a right to accelerate such installment obligations, "no cause of action exists for an installment payment until such payment is due." *Id.* Although the plaintiffs accurately point out that the note in *Hills* did not contain the initial "due and payable" language that is found in the notes at issue here, the holding of *Hills* is no less instructive. When an instrument provides for installment payments, the amount due will be determined by

the installment payment schedule unless the instrument contains unambiguous language to the contrary.

[¶ 9] Here, although the notes declare that their principal balances are "due and payable as of the commencement date," they also unambiguously provide for an alternate due date if "the makers hereunder ..., at their option, elect to repay the obligation, with interest after the commencement date ... in 60 equal monthly installments of principal and interest." The defendants bargained for the right to make installment payments, agreeing to pay additional interest if they exercised their option. By exercising their option, the defendants thereby entered into an alternate payment obligation, the installment schedule. *See Braugh v. Corpus Christi Bank and Trust,* 605 S.W.2d 691, 696 (Tex.Civ.App.1980). The sixty equal installments specified in the note therefore became due and payable at monthly intervals, and, in the absence of an explicit acceleration clause, the plaintiffs had a cause of action only for the accrued installments that were due at the time of the court's judgment. *See Hills,* 309 A.2d at 882–83.

[¶ 10] Finally, we disagree with the plaintiffs' contention that the installment payment option was only available to the defendants so long as they made timely monthly payments. In effect, the plaintiffs seek to imply the existence of an acceleration clause. Neither the notes nor the agreements, however, contain such a clause. Because an acceleration clause runs counter to established law holding that installment payments are not due or collectible until payable, the right of the obligee to accelerate those payments, on default or otherwise, must be clearly stated on the face of the note.[3] The notes here contain no such clear statement.

---

3. *See Frey v. Abdo,* 441 So.2d 1383, 1385 (Miss. 1983) ("It is a recognized principle that a contract to accelerate the maturity of a debt gives a harsh remedy, and that in order to be effective, it should be clear and unequivocal, and ... preference should be given to that construction which will prevent the acceleration of maturity."); *Krosnowski v. Krosnowski,* 22 N.J. 376, 126 A.2d 182, 186 (1956) ("To be enforceable, the option

to accelerate must be clear and certain in its terms; it will not be supplied by mere inference[.]"); *see also Wachta v. First Fed. Sav. & Loan Assn. of Waukegan,* 103 Ill.App.3d 174, 58 Ill.Dec. 676, 430 N.E.2d 708, 715 (1981); *Sheet Metal Workers Local # 76 Credit Union v. Hufnagle,* 295 N.W.2d 259, 264 (Minn.1980); *Executive Hills Home Builders, Inc. v. Whitley,* 770 S.W.2d 507, 509 (Mo.Ct.App.1989); *Weber v. Swenson,*

[¶ 11] Because it is not our function to rewrite the parties' contract by enlarging or diminishing its terms, *see Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 500 (Me. 1996); *Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1388 (Me. 1983), we conclude that the plaintiffs here were entitled to recover an amount representing each missed payment. They did not, however, have the right to accelerate the total obligation in full.[4]

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

207 Neb. 35, 295 N.W.2d 688, 693 (1980); *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex.1991).

4. Given our conclusion that the case must be remanded for further proceedings, we do not reach the defendants' argument that they were denied a meaningful opportunity to contest the reasonableness of the requested attorney fees.