STATE OF MAINE  
ANDROSCOGGIN, SS.

SUPERIOR COURT  
CIVIL ACTION  
DOCKET NO. CV-01-170

IRA A. LEVINE,  
        Plaintiff

v.

**DECISION AND JUDGMENT**

PHYCOGEN, INC.,  
        Defendant,  
and

DONALD L. G... ...ECHT  
LAW...  
NOV 5 200

KEYBANK, N.A.,  
        Trustee

## I. BACKGROUND [1]

Ira A. Levine was the founder, president, and chief executive of PhycoGen, Inc., a Maine Corporation based in Portland.

On March 31, 2000, Levine and PhycoGen's Board of Directors entered into a written severance agreement (pl. ex. 1) which provided *inter alia*, that Levine would "relinquish [his] position in favor of a person with more business experience and to work on such special projects as the Board might assign to him." As compensation for his resignation, PhycoGen would pay him his base salary at the rate of $165,000.00 per year, his fringe benefits, and expenses through the termination date of March 31, 2000. He would also receive severance pay under part 4 of the agreement, which provides as follows:

> **4. Severance Pay.** The Company shall pay to Levine, and Levine shall accept, in full accord and satisfaction of all claims to base salary and bonuses for the remaining term of his Employment Agreement (to wit: approximately 5 years), severance pay in the gross amount of One Hundred and Twenty-Five Thousand Dollars ($125,000) per year for five

---

[1] The factual circumstances of this case are fairly straight forward. To the extent that they are set out in this Decision and Judgment, they constitute the findings of the court unless otherwise noted.

(5) years (total: $625,000). Such severance pay shall be paid in bi-monthly installments commencing April 1, 2000, provided that the remaining balance of the severance pay shall be paid to Levine without discount no later than thirty (30) days following the first to occur of the following events:

(a)    the Company makes a private offering of its stock which nets the Company not less [than] $10,000,000 in new capital;

(b)    the Company makes an initial public offering of its stock;

(c)    the Company merges or consolidates with a publicly-held company; or

(d)    the Company sells all or substantially all of its assets in accordance with a plan of liquidation; or

(e)    the Company sells an interest in any one technology for not less than $20,000,000.

The company made the severance payments to Levine as due up into the fall of 2001. At that time he was told by Eric Saunders, legal counsel for PhycoGen, that the company was experiencing financial difficulties and that the check for September 9, 2000, would be his last. Levine had been paid $180,288.75 of the $625,000.00 due him under the agreement.

When the payments stopped, Levine instituted this action to enforce payment. He obtained an *Ex Parte* Order for Attachment and Trustee Process in the amount of $450,000. KeyBank was served a copy of the Attachment Order and a trustee summons, but failed to respond timely and was defaulted. M.R. Civ. P. 55(a). Levine's request for a default judgment against KeyBank as trustee was denied without prejudice pending entry of judgment against PhycoGen.[2] In that Order the court found that the default conclusively established KeyBank as trustee and that it may be liable for up to $450,000.00 to satisfy any judgment for plaintiff against PhycoGen. The Order further provided that even though KeyBank was in default, it would become liable only

after a judgment is rendered against PhycoGen: "The court cannot grant a judgment against KeyBank until the liability of PhycoGen has been established and that a final judgment in a certain amount has been entered."[3]

On January 11, 2002, Levine requested that a default and default judgment be entered against PhycoGen, Inc. The clerk entered a default against Phycogen on January 14, 2002 pursuant to M.R. Civ. P. 55(a).[4]

KeyBank appeared through counsel on January 11, 2002, and filed a general denial as an "equitable subrogee" for itself and on behalf of PhycoGen; however, KeyBank was not in a position to be acting for PhycoGen and had no standing to do so. The bank also moved to dissolve the Order of Attachment and Declaration as Trustee. M.R. Civ. P. 4B(j). The motion was denied.[5]

The bank then moved to set aside the default against both PhycoGen and the bank. Both motions were denied; however, the court did allow KeyBank intervenor status solely to "participate and defend in any hearing to set damages for the judgment."[6]

While Levine and KeyBank continued to spar and jockey for position in Superior Court, PhycoGen, Inc. was in Chapter 7 in the United States Bankruptcy Court. On August 21, 2002, Levine obtained an Order for Relief from [Bankruptcy] Stay to proceed to judgment against PhycoGen. The Bankruptcy Court further ordered the funds held by KeyBank be turned over to the bankruptcy trustee.

The court subsequently held an evidentiary hearing as to damages.

---

[2] See Order dated January 2, 2002.
[3] See Order dated January 2, 2002.
[4] A default judgment for an amount certain was not entered.
[5] See Order dated February 7, 2002.

[6] See Order dated June 17, 2002.

## II. CLAIMS AGAINST PHYCOGEN

It is clear from all the evidence presented that a valid and enforceable contract (Severance Agreement) existed between Levine and PhycoGen, Inc.; that Levine received all sums due him until September 9, 2001 ($180,288.75); and that a balance of $444,711.25 remained to be paid over the term of the contract.[7] Levine is entitled to judgment against Phycogen, Inc. for the full amount, but for all practical and legal purposes, it is uncollectible as against PhycoGen.

## III. CLAIMS AGAINST KEYBANK

Levine asserts that because of its default, KeyBank must be "adjudged trustee as alleged," i.e., for the full amount of the claim. 14 M.R.S.A. § 2614. Clearly, the total amount of legal liability for Phycogen, Inc. is $444,711.25 over the life of the contract. Although the bank is liable, it strikes the court that it would be an unwarranted windfall for the plaintiff, and a substantial injustice to KeyBank as trustee if the court granted judgment for the full amount, a sum that plaintiff would likely never collect. Nevertheless, in the only cases found by this court, where the Law Court has reviewed cases of a defaulted trustee, liability has been enforced for the full amount.

*Michael A. Butler et al. v. D/Wave Seafood, et al.,* 2002 ME 41, 791 A.2d 928, is a case remarkably similar to the present case,[8] where KeyBank was held liable for the full $80,000.00 settlement agreed to by the principal parties. It must be noted, however,

---

[7] Payments were $4,807.70 every two weeks commencing April 1, 2000 for $125,000 per year for five years.

[8] The case was decided by the Law Court on March, 2002 at a time that this court was dealing with issues surrounding Key Bank's default in this case. Counsel for the bank never disclosed that a similar issue was before the Law Court also involving Key Bank's failure to respond to a trustee summons.

that Key Bank's primary challenge was to the issue of liability by default, not to the methodology of determining responsibility after the default. *Id.* n.7.[9]

In 1987, an insurer/trustee was adjudged fully liable after default when the Superior Court denied a hearing on the issue of damages. *Coombs v. Government Employees Ins. Co.*, 534 A.2d 676 (Me. 1987). GEICO's liability, however, was limited to the lesser of the amount alleged in the trustee summons ($50,000.00) or "the amount for which the principal defendant . . . is ultimately liable in the underlying action." *Id.* at 679. This holding means that the trustee's responsibility can be other than "as alleged," 14 M.R.S.A. § 2614, in the trustee summons.

The maximum liability for KeyBank, in this case, is $450,000 or the amount not paid and due to Levine by PhycoGen, as determined by judgment. Neither *Butler* nor *Coombs* creates any other exception nor has the court found any authority that would limit KeyBank's liability to a sum that Levine might have been able to actually collect from PhycoGen, the amount of PhycoGen's deposits held by KeyBank or any other lesser sum.

The parties do agree that if the court finds for plaintiff that damages are limited to sums due and not paid up to the date of the judgment. *Briggs v. Briggs*, 1998 ME 120, ¶ 9, 711 A.2d 1286, 1289 ($264,422.95; 4,807.69 X 55, payments due from September 22, 2001 through this date, October 31, 2003). Levine argues, however, that he is entitled to the full amount under paragraph 4 of the agreement that provides for acceleration of payment without discount under certain conditions.

> (a) the Company makes a private offering of its stock which nets the Company not less [than] $10,000,000 in new capital;

---

[9] "[T]he approach to calculating the exact amount of KeyBank's responsibility after the default was not challenged in the trial court or in briefing on . . . . appeal." *Butler*, ¶ 5, 791 A.2d at 930.

(b) the Company makes an initial public offering of its stock;

(c) the Company merges or consolidates with the publicly-held company; or

(d) the Company sells all or substantially all of its assets in accordance with a plan of liquidation; or

(e) the Company sells an interest in any one technology for not less than $20,000,000.

(Agreement, pl. ex. 1, ¶ 4)

These conditions for acceleration of payment indicate that the parties contemplated a growing, healthy business; not one that has failed and becomes doomed to the end in bankruptcy. In any event, conditions 4(a), 4(b), 4(c), and 4(d) are not relevant to the PhycoGen's demise or the issue of damages in this case.

Notwithstanding part 4(d), the court finds, after hearing, that even though most of the assets were sold off at minimal amounts, it was not pursuant to a plan of liquidation as contemplated by the agreement and plaintiff is not entitled to acceleration of payment.

KeyBank further asserts that the Order of the Bankruptcy Court voiding the attachment order also defeats plaintiff's claims. That order claimed the funds held by KeyBank for the bankruptcy estate as a preference pursuant to 11 U.S.C. § 547, but did not vacate the entry of default against KeyBank nor did it void the Order of January 2, 2002, adjudging KeyBank as trustee.

But for the bankruptcy proceedings, judgment would be entered against PhycoGen and KeyBank for the full amount of the balance of the agreement if the acceleration clause were operable, or for a lesser amount, as here, if not operable.

## IV.    JUDGMENT

The clerk will make the following entry as the judgment of this case:

1. KeyBank is adjudged and declared trustee in the amount of $264,422.95 for sums due after September 9, 2001 to October 31, 2003, inclusive.[10]

2. Plaintiff is awarded statutory interest and costs incurred relative to KeyBank.

So Ordered.

Dated: October 31, 2003

Thomas E. Delahanty II
Justice, Maine Superior Court

John W. Conway, Esq. &

Rebecca S.K. Webber, Esq.

For Plaintiff Levine

Bruce Hochman, Esq. &

John Lambert, Esq.

for Trustee KeyBank

---

[10] Fifty-five payments at $4,807.69.