STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-446
NM - CUM- 2/16/2001

R.F. FLIPPO, o/b/o herself and
All Others Similarly Situated,

Plaintiff

vs.

L.L. BEAN, INC.

Defendant

ORDER ON DEFENDANT'S MOTION
TO DISMISS

In the complaint, plaintiff Flippo, on behalf of herself and others similarly situated, (plaintiff) complains that the defendant collects from consumers Maine sales taxes on an entire purchase price instead of on a reduced price charged after deducting the face value of coupons earned in connection with a L.L. Bean Visa Card. The plaintiff alleges that this conduct results in a violation of Maine's sales and use tax laws, a breach of an implied contract, and unfair trade practices. See Complaint, ¶¶ 1, 4, 5, 9, 18-27.

The defendant has filed a motion to dismiss. See M.R. Civ. P. 12(b)(1) & (6). The defendant argues that this is a sales tax refund case, which should be pursued with the Maine Revenue Service. See 36 M.R.S.A. § 2011 (1990). The defendant further argues that because the refund procedure pursuant to § 2011 is exclusive, the plaintiff can proceed in the Superior Court only after she has exhausted her administrative remedies, receives an adverse decision from the Maine Tax Assessor, and appeals to the Superior Court. See id. For the following reasons, the defendant's motion is denied.

The Maine sales tax is a levy on the purchaser but may be collected by the seller. See 36 M.R.S.A. § 1753 (1990); see also 36 M.R.S.A. § 1812(1) (Supp. 2000); Trucklease v. Cozy Harbor Seafoods, Inc., 2000 ME 36, ¶ 10, 746 A.2d 916, 919. Sellers pay to the State the taxes levied; the tax is a debt of the retailer to the State of Maine and a debt of the purchaser to the seller until paid. See 36 M.R.S.A. § 1812(1); 36 M.R.S.A. § 1953 (1990); W.S. Libbey Co. v. Johnson, 94 A.2d 907, 910 (Me. 1953).

The Law Court has consistently concluded that a retailer is the taxpayer for purposes of Maine's sales tax statutes. In this case, therefore, the taxpayer is the defendant and not the plaintiff for the purposes of section 2011. See Collins v. State, 2000 ME 85, ¶ 10, 750 A.2d 1257, 1261; State v. Marcotte, 418 A.2d 1118, 1122 (Me. 1980); Harvey F. Gamage Shipbuilder, Inc. v. Halperin, 359 A.2d 72, 76-77 (Me. 1976); State v. Hiscock, 107 A.2d 421, 421 (Me. 1954); W.S. Libbey, 94 A.2d at 910; see also 36 M.R.S.A. §1814(3) (1990).

Contrary to the defendant's argument, the Trucklease case does not provide otherwise. Trucklease involved a TRAC lease, under which the plaintiff/lessor paid tax on trucks as a seller on behalf of the defendant/lessee/buyer. Additionally, the lease provided that the defendant was responsible for payment of all taxes. The plaintiff thus incurred no tax liability. See Trucklease, 2000 ME 36, ¶¶ 13, 15, 746 A.2d at 920 .

The language of section 2011 and the statutory scheme support the conclusion that the retailer is the taxpayer. For example, the State Tax Assessor may refund overpayment of taxes to the "taxpayer's sales and use tax account . . . ." 36 M.R.S.A. §

2

2011 (1990). Sellers of tangible personal property, such as the defendant, must register with the assessor and must collect and remit taxes according to the statutes. See 36 M.R.S.A. § 1754-B(1)(A) (Supp. 2000). Retailers regularly file with the State Tax Assessor returns for sales tax purposes. See 36 M.R.S.A. § 1951-A(1) (Supp. 2000).

The cases relied on by the defendant are based on statutes that explicitly impose the tax at issue on the consumer, that provide that no suit for any sum allegedly wrongfully collected can be maintained until administrative remedies are pursued, and that allow suit only against the government. See 26 U.S.C.S. §§ 4261(d), 7422(a), (f)(1) (Lexis 2000); Brennan v. Southwest Airlines Co., 134 F.3d 1405, 1412 (9th Cir. 1998); Sigmon v. Southwest Airlines Co., 110 F.3d 1200, 1203 (5th Cir. 1997); Kaucky v. Southwest Airlines Co., 109 F.3d 349, 353 (7th Cir. 1997); see also Serna v. H.E. Butt Grocery Co., 21 S.W.3d 330, 334 n.3 (Tex. Ct. App. 1999) (construing Texas law, although different, according to federal law).

Because the plaintiff is not the taxpayer under section 2011, that section's procedure for challenging erroneously or illegally collected taxes is not available to her. The complaint was properly filed in the Superior Court without prior administrative action.

The entry is

The Defendant's Motion to Dismiss is DENIED.

Dated: February 16, 2001

Nancy Mills
Justice, Superior Court

3

Date Filed ____07-21-00____  ____CUMBERLAND____   Docket No. __CV 00-446__

County

Action __UNFAIR TRADE PRACTICES____



R.F.FLIPPO, On Behalf of          L.L. BEAN
Herself and All Others
Similarily Situated

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| PETER J. RUBIN ESQ 774-1200 | DAVID BERTONI ESQ. 786-3566 |
| DANIEL J. MITCHELL, ESQ | PO BOX 3070 |
| PO BOX 9729, PORTLAND ME 04104 | LEWISTON ME 04243 |

Date of
Entry

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION DOCKET
NO. CV-00-446

DONALD L. GARBRECHT
LAW LIBRARY

APR 17 2002

R.F. FLIPPO, )
    Plaintiff )
            )
            )
v. )
            )
            )
L.L. BEAN, )
    Defendant )

**DECISION AND ORDER ON
PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION**

This matter is before the court on the plaintiff's motion to certify a class pursuant to M.R. Civ. P. 23. The class she seeks to certify is defined as follows: all those for whom L.L. Bean has, in violation of Maine's sales tax laws, assessed sales taxes on the full price of merchandise and/or services before deducting the value of "discount coupons" used to purchase such merchandise and/or services. For the reasons set forth below, the plaintiff's motion is granted.

## BACKGROUND

On July 21, 2000, the plaintiff, Rona Flippo ("Flippo"), filed a complaint stating that the defendant, L.L. Bean ("Bean"), issues discount coupons to persons applying for, and to holders of, its Visa Card as part of a purchase incentive program. According to Flippo, these discount coupons are redeemable in the form of discounts on purchases from Bean. Flippo asserts that although Maine's sales tax statute provides that sales taxes should not be collected from retail purchasers on the value of the discount coupons, Bean's normal practice is to collect sales taxes from consumers even on the value of discount coupons used by them for purchases of Bean merchandise; this practice contravenes the provisions of Maine's sales tax law. As a result, Flippo and the members

of the proposed class have overpaid sales taxes on all the purchases they have made using Bean's discount coupons.

Flippo specifically alleges that on the occasions she used Bean's discount coupons to make purchases from Bean, Bean charged sales taxes on the entire sale price of her purchases, including the portion of the sale price that was discounted by way of the coupons. For example, on January 15, 2000, Flippo purchased a garment from Bean with a list price of $39.95. Bean assessed the Maine sales tax then in effect (5.5%) against the full list price, resulting in a price subtotal of $42.15. Bean then deducted from the subtotal the $10 face value of the Bean discount coupon presented by Flippo, resulting in a total purchase price of $32.15. In this transaction, Flippo alleges she was wrongfully charged sales taxes of 55 cents on the value of the discounted coupon.

Flippo maintains that in her case, and that of the members of the class, Bean has failed, and continues to fail, to deduct the value of its discount coupons from the sale price of its merchandise before computing the sales tax. Consequently, she brought this claim asserting that Bean has overcharged sales taxes (Count I), breached its implied contract to charge the proper amount of sales taxes with respect to any purchase transactions involving the use of discount coupons (Count II), and violated the unfair trade practices act (Count III). In July 2000, Flippo moved for class certification.

## DISCUSSION

### A. M.R. Civ. P. 23: General Standards for Class Certification

Rule 23 (a) of the Maine Rules of Civil Procedure lists four prerequisites to a class action, all of which must be met:

(1) The class is so numerous that joinder of all members is impracticable;

2

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

A "rigorous analysis" of the Rule 23 prerequisites must be conducted before a proposed class can be certified, Rand v. Bath Iron Works Corp., 2000 WL 761630 (D.Me. 2000),[1] and the determination of class certification is committed to the broad discretion of the court. Castano v. American Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996). The party seeking certification bears the burden of demonstrating under a "strict burden of proof" that all of the requirements of Rule 23 are clearly met. Rex v. Owens ex rel Okla., 585 F.2d 432, 435 (10th Cir. 1978). See Wilcox v. Petit, 117 F.R.D. 314, 316 (D.Me. 1987) (noting that plaintiffs bear the burden of establishing the right to maintain a class action).

In determining whether a class should be certified, the court should take the allegations of the complaint as true, Thompson v. American Tobacco Co., 189 F.R.D. 544, 549 (D. Minn. 1999), and must not evaluate or decide the merits of the plaintiff's claims. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-178 (1974). A court may, however, "look past the pleadings to determine whether the requirements of rule 23 have been met. Going beyond the pleadings is necessary, as a court must understand the

---

[1] The Law Court has "frequently relied on federal interpretations of the identical counterparts to the Maine Rules of Civil Procedure." Mondello v. General Elec. Co., 650 A.2d 941, 944 n.3 (Me. 1994). See Maine Cent. R.R. Co. v. Bangor & Aroostook R.R. Co., 395 A.2d 1107, 1114 (Me. 1978) ("[W]e value constructions and comments on the federal rule as aids in construing our parallel provision."); Wormelle v. George, 325 A.2d 4, 5 n.3 (Me. 1974) (noting that federal authority provides "valuable guidance"). The text of Maine Rule 23 is identical to the text of federal Rule 23. Considering this similarity and the almost complete lack of Maine case law on class actions, this court will rely extensively on federal case law in ruling on this motion.

claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." Castano, 84 F.3d at 744 (footnote and citation omitted). Thus, the court is allowed "to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992), *superceded by statute on other grounds as stated in* Berger v. Ludwick, 2000 WL 1262646, *7 (N.D. Cal. 2000).

In order to do so, the court must "walk the fine line between a rigorous analysis of the basic claims and method of proof presented by the plaintiffs and the inappropriate delving into an assessment of the merits of those claims." Karofsky v. Abbott Laboratories, CV-95-1009 (Me. Super. Ct., Cum. Cty. Oct. 15, 1997) (Saufley, J.) at 6. Ultimately, the plaintiff must convince this court that she has met her burden, by a preponderance of the evidence, of showing that the class meets the requirements in Rule 23 (a) and at least one of the 23 (b) subsections. Id.

B. **M.R. Civ. P. 23 (a)**

1. **M.R. Civ. P. 23 (a)(1): Numerosity**

Under Rule 23 (a)(1), Flippo must show that the class "is so numerous that joinder of all members is impracticable." M.R. Civ. P. 23 (a)(1). Evidence of exact size or identity of class members is not necessary to satisfy the numerosity requirement. Robidoux v. Celani, 987 F.2d 931, 935 (2nd Cir. 1993). Rather, plaintiffs "must show some evidence of or reasonably estimate the number of class members." Id., *quoting* Barlow v. Marion County Hosp. Dist., 88 F.R.D. 619, 625 (M.D. Fla. 1980) *in parenthetical.* "Where numerosity is a close question, the courts typically will find that numerosity exists and that a later decertification can occur if certification was determined

to have been erroneous." Karofsky at 12, *citing* Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983).

Flippo asserts that the class is so numerous as to render joinder of all members impracticable, and as such she meets this requirement. Since the inception of the Bean Visa Program in 1996, Bean has redeemed discount coupons from 95,425 individuals in sales transactions in which Bean collected Maine sales taxes. Moreover, Bean is a large retailer with customers geographically dispersed across the country, and even throughout the world. In contrast, Bean argues that the class Flippo moves to certify is not a class of which she is a member, and that the class of which she is a member does not meet the numerosity requirement.

Because, as discussed below, this court finds that Flippo is a member of the class she moves to certify, Flippo has met this first requirement. A class encompassing all persons upon whom Bean has assessed sales taxes on the full price of merchandise or services before deducting the value of its discount coupons used to purchase the merchandise or services would potentially include 95,425 persons. This court concludes, therefore, that joinder of all class members is impracticable and therefore the numerosity requirement of Rule 23 (a)(1) has been met.

### 2. M.R. Civ. P. 23 (a)(2): Commonality of Questions of Law or Fact

Rule 23 (a)(2) requires Flippo to show that "there are questions of law or fact common to the class." M.R. Civ. P. 23 (a)(2). This requirement is not "demanding." Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625 (5th Cir. 1999), *cert. denied* 528 U.S. 1159 (2000). It is not necessary for Flippo to "demonstrate that identical questions of law or fact are common to the class." Karofsky, at 12-13. Rather, this

5

requirement is met if "plaintiff's grievances share a common question of law or of fact." Marisol A. ex rel Forbes v. Giuliani, 126 F.3d 372, 376 (2nd Cir. 1997). The test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." In re American Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir. 1996) (citation omitted).

Bean asserts that the facts of Flippo's case differ substantially from those of the purported class, and that as a result, Flippo does not meet this requirement. According to Bean, Flippo obtained a single coupon as an inducement to apply for an MBNA account, and that she never opened an account nor obtained any of the "earned" coupons provided to cardholders in connection with the use of the card. Therefore, "[a]ll of the figures bandied about . . . regarding the number of potential class members, the value of coupons, the number of transactions, etc., are all reflective of earned coupons obtained by cardmembers – not coupons given as inducements to apply for an account." The result, according to Bean, is that Flippo is not even a member of the class she claims to represent. The court disagrees.

In Maine, "[a] tax is imposed on the value of all tangible personal property[2] . . . sold at retail in [Maine]." 36 M.R.S.A. § 1811. "Value is measured by the sale price . . . ." Id. " 'Sale price' means the total amount of a retail sale[3] valued in money," and includes "[a]ll receipts, cash, credits and property of any kind or nature and any amount for which credit is allowed by the seller to the purchaser." 36 M.R.S.A. § 1752 (14)(A).

---

[2] "Tangible personal property" is defined as "personal property which may be seen, weighed, measured, felt, [or] touched . . . ." 36 M.R.S.A. § 1752 (17). There is no question that the items in this case fall under this definition.

[3] The term "retail sale" means "any sale of tangible personal property in the ordinary course of business." 36 M.R.S.A. § 1752 (11).

6

A "sale price" does not, however, include "[d]iscounts allowed and taken on sales." 36

M.R.S.A. § 1752 (14)(B).

The most important question here is the meaning of the term "discount." Maine's

Bureau of Taxation (the "Bureau") has interpreted the tax laws as they apply to retailers

who accept coupons, and has issued an "instructional bulletin" explaining how retailers

are to tax sales in which coupons are used. According to the Bureau, coupons fall into

only one of two categories: those issued by "a manufacturer of the product or by a

retailer." Me. Rev. Services Instructional Bulletin No. 25 (1). As the Bureau explains,

the application of sales tax in each case differs:

> a. Manufacturers' Coupons. When a retailer accepts a manufacturers' [sic] coupon, the retailer does not recognize any loss in the profit made on the sale. The retailer is reimbursed for the face value of the coupon by the manufacturer. In other words, the patron uses the coupon like cash and the retailer receives the cash when the coupons are redeemed with the manufacturer. The sale price on which tax is based is the total selling price before deducting the coupons.
>
> Example: A customer, when purchasing laundry detergent, redeems a coupon issued by the manufacturer of the detergent. The sale price of the detergent is $2.29 and the face value of the coupon is $.25. The sales tax is computed on $2.29; the sale price before deducting the value of the coupon.
>
> b. Retailer's Coupons. When a retailer issues a store coupon, the retailer is reducing the price of the item purchased with the coupon by an amount equal to the face value of the coupon. The retailer reduces his profit on the sale and the value of the coupon is not recovered from any other party. This type of coupon is a seller's discount which is deducted from the sale price before computing the sales tax.
>
> Example: A drug store publishes in an advertising flyer its own store coupon offering $.50 off the purchase of a particular shampoo. The shampoo sells for $2.89. The sales tax is computed on $2.39; the sale price after deducting the value of the coupon.

Me. Rev. Services Instructional Bulletin No. 25 (1)(a) and (b). The Bureau, therefore,

includes retailer's coupons in the definition of "discount," but does not include

7

manufacturers' coupons because the retailer is reimbursed and recognizes no loss. In this case, the determining factor is whether MBNA and Bean have the same or similar arrangement for both "inducement" and "earned" coupons.

While the *purpose* of each coupon is different (the purpose of "inducement" coupons is to encourage a customer to become a member of the Bean MBNA Visa Club, and the purpose of the "earned" coupons is to reward and encourage members to purchase products with the Bean MBNA Visa card), there is nothing in the agreement between MBNA and Bean distinguishing how "inducement" and "earned" coupons are treated as between MBNA and Bean. The agreement essentially provides that Bean will *provide* the benefits, and that MBNA will *administer* the benefits, but neither discusses any details nor defines the terms "provide" and "administer." The court cannot tell if, for example, MBNA reimburses Bean for inducement coupons but not discount coupons, vice versa, or none of the above. Thus, regardless of whether they are both considered "retailer" or "manufacturer" coupons by the Bureau, under the agreement they appear to be indistinguishable.

It appears, therefore, that the plaintiff has met this requirement. The members of the class would have "a question of law or fact common to the class," *i.e.*, whether Bean overcharged sales tax on those purchasing Bean items with either "inducement" or "earned" coupons. If, however, information becomes available in the future demonstrating that the class certification should be changed, the court may alter, amend, or vacate the certification before this case is decided on its merits. M.R. Civ. P. 23 (c)(1). See Millett v. Atlantic Richfield Co., 2000 ME 178, ¶ 17, 760 A.2d 250, 256.

8

### 3. M.R. Civ. P. 23 (a)(3): Typicality

Rule 23 (a)(3) requires the claims or defenses of the representative party to be typical of the claims or defenses of the class. This requirement is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal ex rel Kanter v. Casey, 43 F.3d 48, 57 (3rd Cir. 1994), *citing* 3B JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.06-02 (1993), *and* H. NEWBERG & A. CONTE, 1 NEWBURG ON CLASS ACTIONS § 3.13 (1992). "It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." Mullen, 186 F.3d at 625 (citation omitted). "Like commonality, the test for typicality is not demanding." Id.

A named plaintiff's claim is typical if "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936. "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." Barnes v. American Tobacco Co., 161 F.3d 127, 141 (3rd Cir. 1998), *cert. denied* 526 U.S. 1114 (1999) (citation omitted).

Flippo asserts that her claims are typical, as all the claims are based solely on one common legal theory -- that Bean wrongfully overcharged Maine sales taxes on purchases in which a customer used Discount Coupons. Bean, on the other hand, argues that Flippo's case is atypical. The cardinal rule of class certification, Bean argues, is that the representatives not present unusual or case-specific defenses that might not generally

arise within the certified class or which might interfere with the legitimate claims of other persons who are not subject to such defenses. Bean states:

> For example, Count II of the 3d Complaint seeks recovery under the theory of an implied contract between Bean and Plaintiff. Discovery to date, however, shows that substantial contract-based defenses exist here – and might not exist for other alleged class members. Here, Plaintiff disputed the tax charge at the register when she made her purchase, but nonetheless agreed to buy the merchandise in question from Bean and pay the tax in full. Moreover, she never sought a refund from Bean as was her absolute right under Bean's famous guarantee. At the very least, such conduct raises the defenses of ratification and waiver, as well as estoppel. Presumably, the vast majority of the class she purports to represent would not be impeded by such defenses.

"Typicality will not be present if the class representative's claim is subject to one or more unique defenses that threaten to become the focus of the litigation." 5 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 23.24[b] (3d ed. 1999). See e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 178-180 (2nd Cir. 1990), cert. denied 498 U.S. 1025 (1991) (typicality defeated because named plaintiff's claim was subject to unique defenses in that it continued purchasing certificates of deposit through defendant despite having notice of alleged fraud); Bishop v. New York City Dep't of Housing Preservation and Develop., 141 F.R.D. 229, 238 (S.D.N.Y. 1992) (typicality defeated for one named plaintiff because his demotion presented unique defense to claim of employment discrimination; other named plaintiff found to meet typicality requirement); Edgington v. RG Dickerson & Co., 139 F.R.D. 183, 194 (D. Kan. 1991) (no typicality because named plaintiffs in securities fraud action were subject to unique defense based on lack of reliance). A unique defense precludes a finding of typicality because of the danger that such a defense will preoccupy the class representative to the detriment of the interests of absent class members. J.H. Cohn & Co. v. American Appraisal Assoc., Inc., 628 F.2d 994, 999 (7th Cir. 1980).

On the other hand, a unique defense that is not central to the litigation "does not create a significant danger that the class representative will become distracted, and therefore does not defeat typicality and bar class certification." 5 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 23.24[b] (3d ed. 1999). See e.g., Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 200-201 (S.D.N.Y. 1992) (typicality may be met even though named plaintiff may later be barred from recovering by unique defense that would not impact other class members); Riordan v. Smith Barney, 113 F.R.D. 60, 63 (N.D. Ill. 1986) (typicality is only defeated if unique defenses threaten to become primary issue in litigation); In re Amerifirst Sec. Litig., 139 F.R.D. 423, 428-429 (S.D. Fla. 1991) (since allegations involved same wrongful acts against all class members, mere possibility that unique defense existed based on named plaintiffs' failure to rely on integrity of market in purchasing securities did not preclude typicality).

The court must, therefore, ask whether Bean's "ratification and waiver" defenses would, first, be unique to Flippo, and, second, become central to this litigation. The court finds that Bean has not shown that these defenses would be unique as to Flippo. As stated earlier, there are 95,425 possible plaintiffs in this class action. It cannot be said that none of these plaintiffs did not object to Bean's assessment of sales tax on its products bought with discount coupons. Thus, it has not been shown that it is Flippo alone who is subject to these defenses.

Having found that these defenses are not unique as to Flippo, the court need not inquire as to whether the issue would become central to the litigation. Flippo has, therefore, met the typicality requirement because her claims are typical of the class's claims and focus on the narrow issue of Bean's uniform sales tax procedures. Every

11

member of the putative class bought merchandise at or through Bean using discount coupons. Regardless of whether they objected or failed to take advantage of the money-back guarantee, Bean assessed a sales tax on their purchase. The core allegation of Flippo's claims thus passes the typicality requirement and any atypicality of Flippo's claims, if any, will have minimum impact on the class.

### 4. M.R. Civ. P. 23 (a)(4): Adequacy of Representation

Rule 23 (a)(4) requires Flippo to show that "the representative parties will fairly and adequately protect the interests of the class." M.R. Civ. P. 23 (a)(4). This provision requires a showing that "class counsel is qualified, experienced and generally able to conduct the litigation," and that there is "no conflict of interest between the named plaintiffs and other members of the plaintiff class." Marisol A. ex rel Forbes, 126 F.3d at 378; Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985), *cert. denied* 476 U.S. 1172 (1986). "Because a class action judgment would bind absent class members, strict enforcement of [this] requirement[] is vitally necessary in order to assure that protection to absent parties which due process requires." Wagner v. Lehman Bros. Kuhn Loeb, Inc., 646 F.Supp. 643, 660 (N.D. Ill. 1986) (quotation and citation omitted).

To begin with, the court finds that class counsel is sufficiently qualified, experienced and generally able to conduct the litigation. Counsel has demonstrated both a willingness and an ability to vigorously and competently pursue the claims against the defendant. Bean does not seriously dispute the competence and ability of plaintiff's counsel to pursue the litigation. The defendant does, however, challenge Flippo's ability to act as a representative of the class. For the following reasons, however, the court finds that Flippo will adequately represent the class.

12

What constitutes adequate representation is a question of fact that largely depends on the circumstances of each case. See In re LILCO Litigation, 111 F.R.D. 663, 672 (E.D.N.Y. 1986). The "adequacy of representation" element often is merged with the "typicality" and "commonality" elements because a class representative whose claim is not typical or common cannot be an adequate representative. This is because the class representative acts as a fiduciary for the entire class. See Koenig v. Benson, 117 F.R.D. 330, 333-334 (E.D.N.Y. 1987). As a fiduciary, the class representative owes the putative class a duty of loyalty. See Wagner v. Lehman Bros. Kuhn Loeb, Inc., 646 F.Supp. 643, 661 (N.D. Ill. 1986).

Flippo maintains that she can and will adequately and fairly represent and protect the interests of the class and has no interests that conflict with or are antagonistic to the interests of the class members. Bean, on the other hand, asserts that Flippo's inequitable conduct makes her an inappropriate class representative. Specifically, Bean asks "Having never activated her card, why would she approve a complaint which stated that she had activated the account, used the card, and earned and redeemed Reward Coupons?" The court finds that at this stage in the litigation, Bean has not shown that Flippo would not be an adequate representative. Flippo is familiar with the facts and claims in this action, and is willing and able to finance the litigation. Further, her credibility, at this point, is not a focus of the litigation, and does not appear as though it will be at a later stage.

## C. M.R. Civ. P. 23 (b)

"A class action which meets all four of the requirements of Rule 23 (a) must also qualify under any one of the subsections of Rule 23 (b)." Riordan v. Smith Barney, 113

13

F.R.D. 60, 64 (N.D. Ill. 1986). In order for a class to be certified under Rule 23 (b)(3), the court must find that "[1] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the standards set forth in Rule 23 (b)(3) have been met, the court should consider the following:

(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) The desirability or undesirability of concentrating the litigation of the claims in a particular forum; and

(D) The difficulties likely to be encountered in the management of a class action.

M.R. Civ. P. 23 (b)(3).

### 1. Predominance of Common Questions of Law or Fact

"The first issue, predominance, focuses on the number and significance of common questions, as opposed to individual issues." 5 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE, § 23.44 (3d ed. 1999). "In making a determination whether common questions of law or fact predominate, the threshold question that the court must consider is whether the group for which certification is sought seeks to remedy a common legal grievance." Riordan, 113 F.R.D. at 65. "[T]he Rule requires a pragmatic assessment of the entire action and of all the issues involved." 5 MOORE'S FEDERAL PRACTICE § 23.46[1].

Flippo asserts that the common question in this case is Bean's overassessment of sales taxes, and that that common issue predominates over individual issues. In order to

establish class membership, each potential class member would have to show: (1) Maine's sales taxes apply to the transaction in question, (2) the member purchased Bean merchandise with MBNA Bean Visa discount coupons, and (3) Bean incorrectly applied Maine's sales tax to the price of the merchandise prior to the deduction of the value of the discount coupon. These are the common issues.

There are individual issues, but they do not predominate over the common issues. Each potential class member has an individual issue, *i.e.*, damages. "Nevertheless, if common questions predominate over individual questions as to liability . . . courts generally find the predominance standard of Rule 23 (b)(3) to be satisfied even if individual damages issues remain." 5 MOORE'S FEDERAL PRACTICE § 23.46 [2][a]. See CV Reit, Inc. v. Levy, 144 F.R.D. 690, 699 (S.D. Fla. 1992) (need for individualized damages determinations do not defeat certification of class in securities fraud action); Bresson v. Thomson McKinnon Sec., 118 F.R.D. 339, 343 (S.D.N.Y. 1988) (presence of individual issues of damages does not generally defeat certification if common liability issues otherwise predominate); Riordan v. Smith Barney, 113 F.R.D. 60, 65 (N.D. Ill. 1986) (mere presence of individual damages issues does not usually defeat certification). The court finds that Flippo has met this requirement.

### 2. Superiority of Class Action Over Other Available Methods

"Under the superiority test of Rule 23 (b)(3), a class action must be better than, not merely as good as, other methods of adjudication." 5 MOORE'S FEDERAL PRACTICE § 23.48 [1]. See Butt v. Allegheny Pepsi-Cola Bottling Co., 116 F.R.D. 486, 492-293 (E.D. Va. 1987) (class action must be superior to other available methods of litigation). In this case, a class action is superior to other methods of adjudication.

15

Multiple individual lawsuits would be a poor alternative. The potential number of the putative class is in the thousands. A class action would conserve judicial resources and would be the most efficient use of the court system. In addition, the amount of damages for some, or even most, potential members is minute. There is, therefore, little incentive for individual class member to bring individual actions. Furthermore, the possibility of intervention and/or joinder of class members in a class this large are equally poor alternatives. The court finds, therefore, that Flippo has met this requirement.

THE DOCKET ENTRY IS:

The plaintiff's Motion for Class Certification is granted.
The clerk is ordered to incorporate this order into the docket by reference.

_____
Justice, Superior Court

**DATED: April 9 , 2002**

Date Filed ___07-21-00___ ___CUMBERLAND___ Docket No. __CV 00-446__
County

Action __UNFAIR TRADE PRACTICES__



R.F.FLIPPO, On Behalf of
Herself and All Others
Similarily Situated

L.L. BEAN

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| PETER J. RUBIN ESQ 774-1200<br>DANIEL J. MITCHELL, ESQ<br>PO BOX 9729, PORTLAND ME 04104 | DAVID BERTONI ESQ. 786-3566<br>PO BOX 3070<br>LEWISTON ME 04243 |

| Date of Entry | |
|---|---|
| 2000<br>July 21 | Received 07-21-00:<br>Complaint Summary Sheet filed.<br>Class Action Complaint filed. |
| "   " | |
| July 26 | Received 7-26-00<br>Acknowledgement of receipt of summons and complaint with attached summons filed showing service on 7-24-00 upon defendant L.L.Bean to David W. Bertoni Esq. |
| Aug. 1 | Received 8-1-00<br>Plaintiff's first amended class action complaint filed. |
| Aug. 15 | Received 08-15-00:<br>L.L. Bean, Inc.'s Motion to Dismiss with Exhibit A filed.<br>Order on L.L. Bean, Inc.'s Motion to Dismiss filed. |
| "   " | |
| Aug. 29 | Received 8-29-00.<br>Plaintiff's Unopposed Motion for Enlargement of Time filed. |
| Aug. 30 | Received 8-30-00.<br>Order filed. (Delahanty, J.)<br>It is hereby ordered that the unopposed motion for enlargement of time is hereby granted, and it is further ordered that the deadline for plaintiff to oppose defendant's motion to dismiss is enlarged to and until 9-11-00.<br>8-30-00 copy mailed to; Daniel Mitchell and David Bertoni Esqs. |
| Sept. 11 | Received 09/11/00:<br>Plaintiff's Opposition to Motion to Dismiss with Exhibits 1 and 2 filed. |
| Sept. 19 | Received 09/18/00:<br>Defendant L.L. Bean's Reply in support of L.L. Beans, Inc.s Motion to Dismiss filed. |

STATE OF MAINE

CUMBERLAND, ss.

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

JUL 10 2003

RECEIVED

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV 00-446

R.F. FLIPPO,

Plaintiff

v.

L.L. BEAN, INC. & STATE TAX
ASSESSOR AS INTERVENOR

Defendants

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

AUG 13 2003

Before this court are Plaintiff R.F. Flippo's Motion for Partial Summary Judgment and Defendant L.L. Bean's Motion for Summary Judgment, both pursuant to M.R.Civ.P. 56(c).

## FACTS

L.L. Bean is a Maine-based retailer and catalog company. MBNA America Bank, N.A., a non-party, is in the business of issuing credit cards. In February of 1996, L.L. Bean and MBNA executed a written agreement stating that MBNA would issue an L.L. Bean credit card to qualified L.L. Bean customers. One of the benefits for L.L. Bean cardholders is that when they charge an item they earn coupons that can be used to make purchases from L.L. Bean. R.F. Flippo is a holder of an L.L. Bean credit card issued by MBNA.

Per the abovementioned agreement, twice amended, MBNA is responsible for printing, distributing, and tracking the coupons. In addition, MBNA has

1

made, and continues to make, royalty payments to L.L. Bean. The parties in the present suit, however, dispute in their statements of material facts the nature of these royalty payments and the extent that these payments reimburse L.L. Bean for honoring the coupons. As a result of the way L.L. Bean calculates sales tax on items discounted with the coupons, R.F. Flippo brought a class action suit against L.L. Bean alleging that L.L. Bean overcharged sales tax, breached an implied contract, and violated the Unfair Trade Practices Act. This court then granted the State Tax Assessor's Motion to Intervene.

## DISCUSSION

At the present procedural window, this court must begin its analysis with the following considerations:

> A summary judgment is warranted when the statement of material facts and the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law.

Darling's v. Ford Motor Co., 2003 ME 21, ¶4, 817 A.2d 877, 879 (citing M.R.Civ.P. 56(c), (h)). This court requested that the parties put together a stipulated statement of material fact. However, the parties could not reach an agreement. Therefore, the court will determine if the various statements of material facts are really incompatible.

The issue in this case is whether L.L. Bean has collected too much sales tax from R.F. Flippo and the class she represents. According to R.F. Flippo, when a purchaser redeems the MBNA-issued coupons at L.L. Bean, the retailer should collect tax on the purchase price minus the value of the coupons, instead of collecting tax on the entire purchase price. For example, if a customer wishing

2

to purchase a $100.00 pair of L.L. Bean hiking boots presented to a cashier at the L.L. Bean retail store in Freeport, Maine a $10.00 discount coupon, in R.F. Flippo's opinion, the cashier should charge the customer Maine sales tax on $90.00, not on $100.00.

Maine's tax law is fairly straightforward. Pursuant to the Sales and Use Tax Law a retailer is required to add the requisite tax to the sale price of a good purchased by a consumer. 36 M.R.S.A. § 1753 (1990). While the sale price of a good includes "[a]ll receipts, cash, credits and property of any kind or nature and any amount for which credit is allowed by the seller to the purchaser", it excludes "[d]iscounts allowed on sales." 36 M.R.S.A. §1752 (14)(A)(2) and (14)(B)(1) (1990).

Should the value of the MBNA-issued coupons be included or excluded in a L.L. Bean's calculation of "sale price?" In an Instructional Bulletin, the Maine Revenue Service differentiates between manufacturers' coupons and retailers' coupons. Me. Revenue Serv., Instructional Bulletin No. 25 (Sept. 9, 1953, last am. Sept. 1, 1997). In the former case, the retailer should collect tax on the total purchase because the manufacturer reimburses the retailer for the face value of the coupon. Id. In the latter case, the retailer should collect tax on the reduced price because the retailer is not reimbursed for the cost of the coupon. Id. L.L. Bean and the State Tax Assessor as Intervenor argue that the coupons in question are similar to manufacturers' coupons because MBNA reimburses L.L. Bean for the tendered coupons. In opposition, R.F. Flippo argues that these coupons are more similar to retailers' coupons because MBNA does not entirely reimburse L.L. Bean for the value of the coupons.

This court is uncertain if the Maine Revenue Service's differentiation between manufacturers' coupons and retailers' coupons is applicable to the present set of facts. MBNA issues the coupons to L.L. Bean credit card holders, but does not directly reimburse L.L. Bean after the coupons are redeemed. Instead, per the written agreement and its amendments, MBNA indirectly reimburses L.L. Bean via royalty payments.

When a food contractor provided the employees of a client company with below cost cafeteria meals, the Law Court stated that "it is illogical to conclude that sales tax should be paid only on the sixty percent of the cost of the meal that was charged at the cash register and that no sales tax should be paid on the remaining forty percent of the cost of the meal that [the food contractor has] recovered through the contract payments" from the client company. Flik Int'l Corp. v. State Tax Assessor, 2002 ME 176, ¶21, 812 A.2d 974, 979-80. In other words, even if MBNA indirectly reimburses L.L. Bean for the redeemed coupons, the latter entity must charge sales tax on the amount it recovers via royalty payments. Unlike with actual manufacturers' coupons, it is difficult to determine the amount of tax that needs to be collected with the MBNA coupons.

Consequentially, R.F. Flippo has shown in her statement of material facts that MBNA did not fully reimburse L.L. Bean for the coupons in 1996, 1997, 1998, and 2000. PSMF ¶11. The fact that L.L. Bean may have expected the royalty payments to cover the cost of the coupons is immaterial to whether the royalty payments actually covered the cost of the coupons. Moreover, affidavits or depositions from L.L. Bean employees knowledgeable about the MBNA/L.L. Bean agreement, which does not speak directly to tax consequences of redeemed coupons, are not nearly as persuasive as the financial history of L.L. Bean's credit

4

card program with MBNA. Nor is the State Tax Assessor's argument convincing that the compensation MBNA paid to L.L. Bean includes "Initial Credit Card Income" which appears to be based on factors that do not involve the redemption of coupons. (Morris Ex. 22). Hence, the figures detailed in PSMF ¶11, directly based on L.L Bean's own computations, provide enough information for this court to conclude that L.L. Bean overcharged sales tax on items discounted with coupons in the abovementioned years.

On a final note, all three of the R. F. Flippo's causes of action are essentially alleging the same thing: L.L. Bean overcharged R.F. Flippo and the class she represents sales tax, which can best be described as a breach of an implied contract. See Stanton v. Univ. of Maine Sys., 2001 ME 96, ¶ 12, 773 A.2d 1045, 1050.

WHEREFORE, this court shall **GRANT** Plaintiff R.F. Flippo's Motion for Partial Summary Judgment with regard to liability for a breach of an implied contract pertaining to the relevant sales tax collected from R. F. Flippo and the class she represents in the years 1996, 1997, 1998, and 2000, and **DENY** the Motion with regard to any other years. Conversely, this court shall **DENY** Defendant L.L. Bean's Motion for Summary Judgment for the years 1996, 1997, 1998, and 2000, and **GRANT** the Motion with regard to any other years.

Dated: July _10_, 2003

Roland A. Cole
Justice, Superior Court

5



Date Filed ____07-21-00____ ____CUMBERLAND____  Docket No. _CV 00-446_
                                    County

Action __UNFAIR TRADE PRACTICES__

R.F.FLIPPO, On Behalf of
Herself and All Others                    L.L. BEAN
Similarily Situated                       STATE TAX ASSESSOR-INTERVENOR

                                   vs.

Plaintiff's Attorney                     | Defendant's Attorney
PETER J. RUBIN ESQ 774-1200              |     DAVID BERTONI ESQ. 786-3566
DANIEL J. MITCHELL, ESQ                  |     PO BOX 3070
PO BOX 9729, PORTLAND ME 04104           |     LEWISTON ME 04243

Thomas Knowlton, Esq. AAG (St. Tax Assessor)
6 State House Station
Augusta ME 04333

Date of

STATE OF MAINE

CUMBERLAND, ss.

R.F. FLIPPO,

Plaintiff

v.

L.L. BEAN, INC. & STATE TAX
ASSESSOR AS INTERVENOR

Defendants

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV 00-446

STATE OF MAINE
Cumberland. ss, Clerk's Office
SUPERIOR COURT

JAN 07 2004

RECEIVED

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

APR 13 2004

Before this court is Defendant, L.L. Bean's Motion to Disqualify Plaintiff's Expert Witness and Defendant, L.L. Bean's Motions for Reconsideration.

## FACTS

The adjudication of this class action in based in large part on whether the coupons offered by Defendant, L.L. Bean ("Bean") to its Visa Card holders should be characterized as either manufacturers or retailers coupons. In this regard, the Class has put forward, Dr. Daniel, a Professor of Marketing at the University of Maine who was extensive expertise in marketing and the use of manufacturers' coupons as marketing tools. In response, Defendant Bean has filed a Motion to Disqualify Dr. Daniel.

Additionally, Defendant Bean has filed two Motions to Reconsider. First, the Defendant Bean contends that the court should reconsider its Order dated July 22, 2003. Defendant Bean also argues that the court should reconsider its Order regarding determination of class issues and notice.

## DISCUSSION

First, M.R. Civ. P. 7(b)(5), provides that "[m]otions for reconsideration of an order shall not be filed unless required to bring to the court's attention an error, omission or new material that could not previously have been presented. A court may in its discretion deny a motion for reconsideration without hearing and before opposition is filed." M.R. Civ. P. 7(b)(5).

Here, Defendant Bean contends that the court committed two factual errors in its July 10, 2003, Order. Specifically, Defendant Bean argues that ongoing income more than reimbursed it for the full face value of the coupons. In addition, however, Defendant Bean asserts that even if Plaintiff is correct that ongoing income must reimburse it for all program benefits, such reimbursement only fell short in 1996 and 1998. Plaintiff responds that these legal questions were the subject of extensive briefing and argument by the parties on their cross motions for summary judgment. This court finds, after extensive review of the submitted documents, that these legal questions were the subject of extensive briefing and that no factual error exists. See M.R. Civ. P. 7(b)(5).

Next, Defendant Bean contends that the Plaintiff's expert witness, Dr. Daniel, should be disqualified. Rule 702 governs the admissibility of expert testimony. It provides that: [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." M.R. Evid. 702. "In applying this rule, the trial court must consider whether the matter is beyond common knowledge so that the untrained juror will not be able to determine it intelligently and whether a person with specialized knowledge can give a helpful opinion." Pelkey v. Canadian Pacific

Ltd., 586 A.2d 1248, 1254 (Me. 1991) (citation omitted). "In addition, the trial court must determine whether an expert witness possesses the requisite qualifications to form an expert opinion. This determination is committed to the discretion of the trial court and will not be disturbed on appeal absent a showing that the discretion was abused." Id. (citation omitted). The Law Court has also held that it will "defer to the trial court on the determination of whether the expert's qualifications are sufficient to allow the expert to testify. As long as the expert is qualified, the extent of the qualifications goes to the weight of the expert's testimony." State v. Cookson, 2003 ME 136, ¶ 22, ___ A.2d ___ (citation omitted).

In the case at bar, Dr. Daniel, testified at his deposition that he was being asked to testify in regard to his "interpretation of an agreement between L.L. Bean and MBNA." (See Daniel Dep. at p. 12, 10-20.) Moreover, Dr. Daniel testified that he would also be offering an opinion regarding his "interpretation of [a] Maine sales tax provision." Id. The Plaintiff, however, asserts in its brief that Dr. Daniel would be providing the court with relevant expertise to assist it in defining the type of coupon at issue in this case. (See Plaintiff's Brief in Opposition of the Defendant's Motion to Disqualify Expert Witness.) "Dr. Daniel, [is] a Professor of Marketing at the University of Maine who has extensive expertise in marketing and the use of manufacturers' coupons as marketing tools, to assist the Court in understanding the differences between 'manufacturers' and 'retailers' coupons." (Id. at 1.)

On the present record, this court concludes that Dr. Daniel possesses sufficient knowledge and experience to testify in regard and that his testimony will assist the trier of fact in understanding the coupons in question. See Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 592, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (The Supreme Court created a two prong test to determine the scientific reliability of proposed expert

testimony: "[w]hether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.") Conversely, however, this court also finds that Dr. Daniel is incompetent to express an opinion regarding the interpretation and meaning of the relevant contract and the Maine tax laws. In sum, Dr. Daniel's testimony will be limited to his knowledge and experience in regard to the type of coupons at issue.

Finally, Defendant Bean requests that this court reconsider its decision regarding class notice issues. Both parties, however, have agreed to provide this court with further information regarding these issues. Accordingly, this court reserves ruling on Defendant's Motion for Reconsideration of Class Issues.

WHEREFORE, this court **DENIES** Defendant Bean's Motion to Reconsider the Motion for Partial Summary Judgment. Also, this court **DENIES** Defendant Bean's Motion to Disqualify the Plaintiff's Expert Witness. Finally, this court reserves judgment on Defendant Bean's Motion for Reconsideration of Class Issues.

Dated: January ___7__, 2004

Roland A. Cole
Justice, Superior Court

Date Filed ____07-21-00____ ____CUMBERLAND____ Docket No. _CV 00-446_
County

Action __UNFAIR TRADE PRACTICES__

R.F.FLIPPO, On Behalf of
Herself and All Others
Similarily Situated

L.L. BEAN
STATE TAX ASSESSOR-INTERVENOR

vs.

Plaintiff's Attorney

PETER J. RUBIN ESQ 774-1200
DANIEL J. MITCHELL, ESQ
PO BOX 9729, PORTLAND ME 04104

Thomas Knowlton, Esq. AAG (St. Tax Assessor)
6 State House Station
Augusta ME 04333

Defendant's Attorney

DAVID BERTONI ESQ. 786-3566
PO BOX 3070
LEWISTON ME 04243

Date of
Entry

STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2005 JAN 26 A 10: 33

SUPERIOR COURT
CIVIL ACTION
CV-00-446

RAC-CUM-1/...2005

R. F. Flippo,
          Plaintiff,

v.                                                    ORDER

L.L. Bean, Inc.,
          Defendant



FEB 7 2005

This case comes before the Court on an evidentiary hearing regarding the mechanics of class notification, pursuant to Rule 23 of Maine Rules of Civil Procedure.

## FACTS

In 1996, Defendant retailer L.L. Bean entered an agreement with MBNA America Bank, N.A., whereby MBNA would issue an L.L. Bean credit card. Plaintiff is a representative holder of this L.L. Bean credit card. As an incentive to get and use the credit card, holders received discount coupons they could apply to future purchases of L. L. Bean merchandise. However, L.L. Bean charged cardholders sales tax on the full amount of their purchases before the value of the coupons was subtracted from the purchase price. Plaintiff charged L.L. Bean with overcharging sales tax, breach of implied contract to charge correct sales tax, and violation of the Unfair Trade Practices Act. On April 9, 2002, this court granted Plaintiff's Motion for Class Certification pursuant to 23(b)(3) M.R. Civ. P. On July 10, 2003, Plaintiff was granted partial summary judgment on Count II, breach of implied contract to charge correct sales tax for

the years 1996, 1997, 1998, and 2000. L.L. Bean was granted partial summary judgment on the issue of any breach of implied contract for all other years. Both L.L. Bean's motions to decertify the class and to reconsider the partial summary judgment in favor of Plaintiff were denied.

On September 8, 2004 the Court held an evidentiary hearing on issues surrounding notification of class members, pursuant to Rule 23 of the Maine Rules of Civil Procedure. Both parties submitted briefs.

## DISCUSSION

Under Maine Rules of Civil Procedure, "[i]n any class action brought under subsection (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." M.R. Civ. P. 23(c)(2).

Because the names and addresses of the class members have been reliably identified by L.L. Bean, individual notice to those identified members is absolutely required under the rule. The court must now determine three things: (1) who will pay the cost of individual notices; (2) how individual class members will be reached; and (3) what information individual notices must contain in order to be "the best notice practicable under the circumstances."

Plaintiff argues that the court should impose the costs of notice on L.L. Bean as a cost of litigation, following partial summary judgment in Plaintiff's favor. Plaintiff also argues that cost-effective measures for individual notice could include attention-getting announcements in L.L. Bean's regular catalog mailings or billing statements, directing class members to more detailed information available by phone or online. If the court requires notice by mail, Plaintiffs argue that third-class postage should be allowed.

L.L. Bean argues that the best notice practicable under the circumstances is notification by first class mail to all class members at Plaintiff's expense. L.L. Bean argues that use of its catalogs or credit card bills would be ineffective, because so many of these mailings go wholly or largely unread, and any "blurbs" referring members elsewhere would not include the information required in a (b)(3) notice. L. L. Beans also maintains such notice would hurt the company's image with those members of the general public who see the litigation announcement, but who are not members of the class.

## A. Who Pays for Notice.

The Law Court has found that, because Maine Rule 23 is "identical in all respects" to Federal Rule 23, federal case law on Rule 23 notice may be applied as persuasive. *Millett v. Atlantic Richfield, Co.* 2000 ME 178, ¶ 11, 760 A.2d 250, 253-54. The United States Supreme Court held that individual notice to clearly identified (b)(3) class members cannot be dispensed with because the cost of notice is "prohibitively high." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). Because part of the purpose of notice is to protect the due process rights of both plaintiffs and defendants, notice cannot be waived by, nor "tailored to fit the pocketbooks of the particular plaintiffs." *Id.* at 176. The Supreme Court also found, that "the usual rule is that a plaintiff must initially bear the cost of notice to the class" . . . "as part of the ordinary burden of financing his own suit." *Id.* at 178-79. Plaintiffs may eventually recapture these expenses as a cost of litigation if plaintiffs win their suit.

Courts have shifted the cost of notice or allocated those costs between the parties only in a few exceptional circumstances.[1] Here none of the limited exceptions to the general rule of *Eisen* in (b)(3) class actions applies. Partial summary judgment has been found for both sides, on one of three claims, and there has been no settlement or final judgment on the merits. Nothing suggests this litigation cannot go forward unless L.L. Bean assumes the cost of notice. There is no claim of a fiduciary relationship between the parties. Therefore, the cost of notice falls squarely to the Plaintiff.

## B. What notice is "reasonably calculated to reach" class members.

The Rule 23(c)(2) requirement of individual notice "leaves to practitioners and to the courts the necessity of utilizing their "cooperative ingenuity" in determining the most suitable notice in each case." 3 Newberg on Class Actions § 8:4 (2002)(citing *Berland v. Mack*, 48 F.R.D. 121, 129 (S.D. N.Y. 1969). It is incumbent on the plaintiff's attorney to suggest to the court novel means of minimizing the cost outlay, while at the same time complying with the dictates of Rule 23(c)(2) and due process. *Id.* at § 8:6. The First Circuit has noted that"[i]ndividual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice, but it is the court's duty to ensure that the notice ordered is reasonably calculated to reach absent

---

[1] For example, the *Eisen* Court noted such shifting may occur when the defendant is in a fiduciary relationship with the plaintiffs. *Eisen*, 417 U.S. at 178 & n. 15. Some courts have allowed limited "sharing and even shifting of the financial burden [of notice], where that would promote basic equities and otherwise unlitigible but meritorious claims." 3 Newberg on Class Actions § 8:6 (2002)(citing *e.g., Mountain States Tel. & Tel. Co. v. District Court*, 778 P.2d 667, 673 (Colo. 1989).[1] However, "interim litigation costs, including class notice costs, may still sometimes be shifted to the defendant after plaintiff's showing of some success on the merits, whether by preliminary injunction,[1] partial summary judgment,[1] or other procedure.[1]" 3 Newberg on Class Actions § 8:6 (2002). *Eisen* warns against any preliminary mini-evidentiary hearings on the merits in class actions, however. *Eisen*, 417 U.S. at 177-78.

class members." *Reppert v. Marvin Lumber*, 359 F.3d 53, 56 (1st Cir. 2004)(citations and quotations omitted).

While plaintiffs must bear the cost of notice, plaintiffs may not required to pay for first class mailing when the defendants' facilities and regular communication with class members are less expensive and more efficient. Nothing in *Eisen* prohibits courts from allowing plaintiffs to make use of defendants "established lines of communication with its customers." 3 Newberg on Class Actions § 8:6 (2002)(citing *American Timber & Trading Co. v. First Nat'l Bank of Or.*, 334 F.Supp. 888 (D. Or. 1971)(holding nothing in *Eisen* forbids minimizing notice costs to plaintiffs when defendants are already in regular communication with most class members)). *See also, Oppenheimer Fund Inc., v. Sanders*, 437 U.S. 340, 356 n.22 (1978)(noting that a number of courts require defendants in (b)(3) class actions to enclose class notices in their own periodic mailings to reduce expenses); *Jacobs v. Sea-Land Service, Inc.*, 1980 WL 141 (N.D. Cal. 1980)(employee notice enclosed in paycheck envelope); *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 437 (D. N.M. 1988)(ordering defendant telephone company to allow plaintiffs to enclose notice in monthly billing envelopes); *Dolgow v. Anderson*, 43 F.R.D. 472, 498 (E.D. N.Y. 1968)(defendant corporation required to mail notice in its next regular communication with shareholders); *Kan. Hosp. Ass'n v. Whiteman*, 167 F.R.D. 144, 145-46 (D. Kan. 1996)(requiring defendants to insert notice in monthly mailings). In such cases, the plaintiff pays for any incremental expense to the defendant.[2]

---

[2] Courts have also found bulk mailings may reasonably be substituted for first class mailings. *See, e.g., State of Ill. v. Harper & Row Publishers, Inc.* 301 F.Supp. 484, 494 (N.D. Ill. 1969).

Here, L.L. Bean raises two issues: first, that the bulk of catalogs and billing statements are discarded or only partially scanned by recipients, so notice is unlikely to reach many class members by these means. Experts on both sides concur, at least regarding the catalogs.[3] Second, L.L. Bean does not want this litigation made known to the general public by way of L.L. Bean's own commercial publications. Plaintiffs argue the costs of notice to over 95,000 class members is huge, that L.L. Bean's mailings or credit card bills are the most cost-efficient method of reaching class members, and that both the catalogs and bills have spaces that can be used to make notice more visible to class members.

L.L. Bean is not arguing that Plaintiffs cannot use its "channels of communication" with its customers. However, L.L. Bean rightfully objects to the prospect of ineffective notice to potential plaintiffs. Part of the due process protections of notice benefits the defendant, ensuring a settlement or final judgment will reach and bind most potential plaintiffs.

Plaintiffs' suggestion that a message printed in the customer message section near the address label on the catalog or in the "important news" box on the billing statements improves the chances a notice will be read rather than discarded or ignored, is not convincing to this Court. This Court will therefore require that the Plaintiffs mail an individual notice to each identified class member.

## C. What Information the Notice Must Contain.

Practitioners and the courts have flexibility when fashioning the content of the notice required for Rule 23 (b)(3) class actions. *See, e.g. Gold Strike Stamp Co. v.*

---

[3] Also, a given customer receives only some of Bean's many catalogs, and no single catalog is guaranteed to go to all class members.

*Christensen*, 436 F.2d 791, 798 (10th Cir. 1970). However in (b)(3) actions, certain content is required. The Notice must say:

> (A) the court will exclude the member from the class if the member so requests by a specified date;
> (B) the judgment whether favorable or not, will include all members who do not request exclusion; and
> (C) any member who does not request exclusion may, if the member desires, enter an appearance through his counsel.

M.R. Civ. P. 23(c)(2). In addition, to serve the purposes of the rule and satisfy due process requirements, notice must also contain "objective . . . neutral . . . information a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the decision." *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.Supp. 1088, 1105 (5th Cir. 1977).[4]

Also, because the court directs notice under Rule 23, notice is properly issued in the name of the court under a court letterhead or its equivalent, and includes the caption, court and docket number of the case. *E.g., In re Franklin Nat'l Bank Securities Litigation*, 73 F.D.R. 25, 29 (E.D. N.Y. 1976)(notice is sent in the name of the court clerk with the post office box of the court clerk as return address). Thus, notice in an antitrust action took "the form of a printed postcard

---

[4] The notice also "must present a fair recital of the subject matter and . . . give notice of the opportunity to be heard." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977). Language in the notice should free of legal jargon and understandable to the average person. *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.Supp. 1088, 1104 (5th Cir. 1977). Notice should not suggest the likelihood of success or failure, but should make members aware of the risks of class membership. *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). Notice typically will include:
> 1. Brief summary of the complaint and the suit's progress, including certification order and definition of the class, any partial summary judgment for defendants, and relief sought.
> 2. Judicial disclaimer of any view of merits.
> 3. A method for directing class responses to either the court or counsel and deadlines for same.
> 4. Information on access to litigation documents.

3 Newberg on Class Actions § 8:31 (2002).

of adequate size, or of a 'mailer' consisting of a folded single sheet of paper . . . bear[ing] the legend 'An important notice from the United States District Court.'" *In re Antitrust Actions* 333 F.Supp. 291, 293 (S.D. N.Y. 1971).

L.L. Bean argues this information cannot be made to fit into spaces on the catalog or billing statement, and that Plaintiffs proposed notice, directing identified class members to a phone number or website, does not meet the requirements of Rule 23. Such notice also does not bear the imprimatur of the court.

Here Plaintiff's solution runs counter to the clear requirements of the rule. In *Eisen,* the Supreme Court insisted that the standards for notice be strictly followed, when, as here, plaintiff knows the class members' names and addresses. The Court "has clearly indicated that the specific language of Rule 23 (c)(2) will not continence any diminution of its prescribed individual notice to all whom the defendant will identify." 3 Newberg on Class Actions § 8:11 (2002). The prescribed notice includes specific content advising class members of their rights. Plaintiffs' suggested referral of class members to phones and websites for additional information more closely resembles methods allowed for notice to unidentified, potential class members, rather than the methods required in Rule 23 (c)(2) for individual notice to known class members. Although a (b)(3) class action may be enclosed in defendants' commercial mailings, paychecks, or bill statements, it must nonetheless contain the information specified by Rule 23(c)(2). While plaintiffs may use referral to a phone number or website to burden *unknown* class members with the task of identifying themselves, nothing in *Eisen* or Rule 23 suggests plaintiffs may burden *known* class members with the task of notifying themselves of their rights.

These content requirements preclude Plaintiff from using the L.L. Bean mailings as a "heads up" to identified class members, directing them elsewhere. While using a card or sheet inserted in those mailings might meet the Rule 23 content requirements, an insert does not do enough to ensure notice reaches the attention of identified class members.

This Court **ORDERS** that notice be provided to all known class members in this (b)(3) class action pursuant to Rule 23(c)(2) of Maine Rules of Civil Procedure by individual mailings, with the cost to be borne by the Plaintiff. Such notice must contain the information required under Rule 23(c)(2) and should bear the imprimatur of this Court. Plaintiff may mail each class member a letter, a folded sheet, or a postcard if it complies with the above requirements. Third class postage is sufficient for this notification, but notices should be clearly and immediately identified as important, contain the requisite information, and bear the imprimatur of the Court.

This Court further **ORDERS** L.L. Bean to furnish Plaintiffs with a list containing the names and addresses of all known holders of the subject discount coupons used to promote its credit card in the years at issue.

Date_____ 26, 2005

Roland Cole
Justice, Superior Court

Date Filed ___07-21-00___ ___CUMBERLAND___ Docket No. _CV 00-446_
County

Action __UNFAIR TRADE PRACTICES__

R.F.FLIPPO, On Behalf of
Herself and All Others
Similarily Situated

L.L. BEAN
STATE TAX ASSESSOR-INTERVENOR

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| PETER J. RUBIN ESQ 774-1200 DANIEL J. MITCHELL, ESQ PO BOX 9729, PORTLAND ME 04104 Thomas Knowlton, Esq. AAG (St. Tax Assessor) 6 State House Station Augusta ME 04333 | DAVID BERTONI ESQ. 786-3566 PO BOX 3070 LEWISTON ME 04243 |

Date of
Entry

2000
July 21        Received 07-21-00: